```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF

         v.            Civil No. 06-5146

ALVIN A. TOLBERT,
ROBERTA SUE TOLBERT,
A & R EQUITY HOLDINGS                                 DEFENDANTS
```

## MEMORANDUM OPINION

Now on this 13th day of September, 2007, comes on for consideration the Government's **Motion for Summary Judgment (Doc. 20).** Defendants Alvin Tolbert and Roberta Tolbert have filed separate pro se Responses (Docs. 35, 38).[1] The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

### BACKGROUND

1. The Government brings this action seeking to reduce to judgment federal tax assessments made against Mr. Tolbert for the years 1992 to 2002; to foreclose federal tax liens on real property Mr. and Mrs. Tolbert allegedly fraudulently conveyed to A & R Equity Holdings (hereinafter "A & R Equity") in an attempt to avoid the tax liens; and to obtain a judicial sale of the

---

[1] After the filing of the motion for summary judgment, defense counsel moved to withdraw from the case (Doc. 32) and Mr. Tolbert notified the Court that he had terminated his counsel and would be representing himself (Doc. 31). The Court granted counsel's motion to withdraw and noted that Mr. and Mrs. Tolbert could each act on their own behalf in this action, but that the separate defendant, A & R Equity Holdings, could not proceed without legal representation. (Doc. 34.) The Court granted A & R Equity until on or about August 27, 2007, to have an attorney enter an appearance on its behalf, but it has not done so and has not responded to the summary judgment motion.

property. (Doc. 1.) The Government includes Mrs. Tolbert as a defendant in this action because she claims an interest in the subject property. The Government also includes A & R Equity as a defendant in this action because it holds record title to the property.[2]

2. The Government moves for summary judgment, arguing that there is no dispute as to any material fact regarding its entitlement to a judgment on the tax liens and an order of foreclosure and judicial sale of the subject property.

Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Walsh v. United States, 31 F.3d 696 (8th Cir. 1994). Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995). The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence

---

[2]Citimortage, Inc., which holds a mortgage on the property that has priority over the Government's lien, was previously dismissed as a defendant to this action, as the Government entered into a stipulation with Citimortage setting forth its respective entitlement to proceeds from any judicial sale of the property. (Docs. 16-17.)

of a genuine dispute.  City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).

    3.    Pursuant to Local Rule 56.1, the Government has filed a statement of facts which it contends are not in dispute.  (Doc. 22.)  Mr. and Mrs. Tolbert have filed separate statements of facts.  (Docs. 37, 40, 42.)  Based on these submissions and the exhibits attached thereto, the following is a summary of the relevant facts, which are undisputed except where otherwise noted:

    *    Mr. and Mrs. Tolbert acquired the subject property, located at 2230 South 21st Street in Rogers, Arkansas, on February 9, 1977, and they have resided on the property since that time. Prior to the transfer of title to the property to A & R Equity, Mr. and Mrs. Tolbert owned the property as tenants by the entirety and it was their primary asset.  The Government estimates the fair market value of the property to be $109,000.00.  Mr. Tolbert opines that the property "probably is not worth quite that much, but that [the Government's estimation] is not too far off."  (Doc. 37 ¶ 40.)

    *    Beginning in 1992, Mr. Tolbert failed to file income tax returns.  Mr. Tolbert believes:

-- that the IRS is a part of the International Monetary Fund and not part of the United States;

-- that there is no law requiring him to file an income tax return or pay an income tax;

-3-

--   that the money he earns is not "effectively connected with the United States," because there are two United States and he is not involved in the corporate United States, which includes the American District of Columbia, American Samoa, and the Virgin Islands;

--   that he is a citizen of the United States of America and not a United States citizen; and

--   that only "a few very select people" (government employees, judges, legislators, and senators) are liable for the federal income tax.  (Doc. 22 ¶ ¶ 13-20.)

\*   On August 22, 1994, and again on September 22, 1994, the IRS sent Mr. Tolbert notices informing him that he had not filed or paid his taxes for 1992.

\*   Mr. Tolbert responded to both of these notices, stating, inter alia, that he was a "<u>NONTAXPAYER</u> and ... not 'subject' to the jurisdiction of the United States and/or District of Columbia."  (Doc. 23 Exs. D & E.)

\*   In October 1994, Mr. and Mrs. Tolbert created the "A & R Equity Trust, a pure constitutional trust with its sole beneficiaries Roberta and Alvin."  (Doc. 22 ¶ 26.)  The A & R in A & R Equity stands for Alvin and Roberta Tolbert and the address for the entity is the Tolberts' residential address.  The trustee for A & R Equity is unknown.

\*     On October 26, 1994, the Tolberts transferred title to the subject property to A & R Equity.  According to Mr. Tolbert, A & R Equity paid $10.00 for the property.  The Tolberts have continued to reside at the property and have continued to pay the mortgage, real estate taxes, and utility bills for the property. Further, the Tolberts do not have a lease agreement or pay rent on the property to A & R Equity.

\*     Mr. Tolbert did not file federal income tax returns from 1992 through 1994 and from 1998 through 2006; he did file them for the years 1995 through 1997, because he was in bankruptcy.  Mr. Tolbert has not voluntarily paid his federal income taxes since 1992.

\*     The IRS made federal income tax assessments against Tolbert for the years 1992 through 2002.  According to the Government, as of July 31, 2007, the total balance owed by Mr. Tolbert on the assessments, including accrued interest and statutory penalties, is $354,429.73.  The IRS has filed federal tax liens against Tolbert and against A & R Equity -- "as Nominee of [Mr.] Tolbert" -- for the 1992 through 2002 tax liabilities. (Doc. 22 ¶ 7.)

## DISCUSSION

### Validity of Tax Assessments

4.    IRS certificates of assessments for unpaid taxes are sufficient evidence to establish the validity of the assessments

and support a summary judgment reducing those assessments to a judgment in favor of the Government.  See United States v. Gerards, 999 F.2d 1255, 1256 (8th Cir. 1993), cert. denied, 510 U.S. 1193 (1994); United States v. Meisner, 2007 W.L. 203950, *2 (D. Neb. Jan. 25, 2007).  In an action to reduce federal tax assessments to judgment, certificates of assessments offered by the Government establish the Government's prima facie case and shift to the taxpayer the burden of proving that the IRS tax assessments are incorrect.  See Mattingly v. United States, 924 F.2d 785, 787 (8th Cir. 1991); Kiesel v. United States, 545 F.2d 1144, 1146 (8th Cir. 1976); Meisner, 2007 W.L. 203950, * 2.

    5.   The Government has submitted Certified Form 4340 Certificates of Assessments for Mr. Tolbert's income tax liabilities for the years 1992 through 2002. In response, Mr. Tolbert has submitted copies of IRS 1040 Forms which he completed on August 7, 2007, indicating that he had no wages for the years in question.  In an affidavit attached to the forms, Mr. Tolbert explains:

> [T]he companies for which I work refuse to issue the correct forms after repeated requests.
>
> They have listed payments as "wages" ... for fear of retaliation from the IRS.  For the record, I am now rebutting those claims ... stating that:
>
> 1.   I am a non-federal private sector worker ..., and therefore have not earned "wages"....

    2.    I have never been in a "trade or business" ... or been an "officer of a corporation" ... or had "self-employment income" ....

    3.    I have not been in the employment ... of an "American employer" ... earning "wages" ....

(Doc. 42 pg. 2.)

    6.    The self-serving 1040 Forms prepared by Mr. Tolbert and his arguments that his earnings do not constitute wages subject to taxation are clearly meritless.  Mr. Tolbert has submitted nothing of substance to challenge the accuracy of the IRS' certificates of assessment.

### Statute of Limitations

    7.    Mr. Tolbert next argues, "The first three years are barred by limitations.  The [G]overnment asks this court to presume and speculate the date of assessment."  (Doc. 35 pg. 2.)

    The Certificates of Assessments submitted by the Government and an affidavit from the IRS officer assigned to collect Mr. Tolbert's unpaid taxes establish that the dates of assessment for the tax years 1992, 1993, and 1994, were, respectively, November 20, 1995, November 6, 1995, and October 5, 1998.  The Government had ten years from the date of the assessments to bring suit.  See 26 U.S.C. § 6502(a)(1).

    The Government points out, and it is not in dispute, that Mr. Tolbert was in bankruptcy for 119 days during 1998 and 1999.  The statute of limitations was tolled during this time period and for six months thereafter.  See 26 U.S.C. § 6503(b).  Thus, the

-7-

statute of limitations for the oldest tax assessment – November 6, 1995 for the tax year 1993 – did not expire until on or about September 6, 2006. The instant action was timely instituted, as it was filed on August 9, 2006, over a month before the expiration of this statute of limitations.

### Attachment of Tax Liens to the Property and Fraudulent Transfer

8. If any person liable to pay any tax neglects or refuses to pay it after demand, the amount owing "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied." 26 U.S.C. § 6322. Thus, on the dates of the assessments for the tax years in question, federal tax liens attached to all of Mr. Tolbert's property.

9. The Government may collect the tax debts of a taxpayer from property that has been fraudulently transferred to another. See United States v. Scherping, 187 F.3d 796, 804-06(8th Cir. 1999), cert. denied, 528 U.S. 1162 (2000). The Government argues that the conveyance of the subject property from the Tolberts to A & R Equity was a fraudulent conveyance and that the property is therefore subject to the tax liens.

Whether a conveyance may be set aside as fraudulent is determined in accordance with state law. Id. at 804. Under Arkansas law, a transfer of property by a debtor is considered fraudulent if the debtor made the transfer with actual intent to hinder, delay, or defraud a creditor. See Ark. Code Ann. § 4-59-204(a)(1). The factors to be considered in determining the intent to defraud include whether:

* the transfer was to an insider;
* the debtor retained possession or control of the property after the transfer;
* the transfer occurred shortly before or shortly after a substantial debt was incurred;
* the transfer was of substantially all the debtor's assets; and
* the value of the consideration received by the debtor was reasonably equivalent to the value of the property transferred.

See Ark. Code Ann. § 4-59-204(b).

10. In the present case, the Tolberts transferred title to the subject property to A & R Equity approximately two months after the IRS sent its first notice to Mr. Tolbert regarding his failure to pay taxes. While the value of the property is in excess of $100,000.00, A & R Equity paid only $10.00 to acquire title to the property. Further, Mr. and Mrs. Tolbert are the sole

beneficiaries of the A & R (which stands for Alvin and Roberta Tolbert) Equity trust, the trustee is unknown, and the address for the entity is the Tolberts' residential address. Even more significant is the fact that the Tolberts have continued to reside at the property, have continued to pay the mortgage, taxes, and other bills on the property, and they do not have a lease agreement or pay rent on the property to A & R Equity.

These circumstances clearly demonstrate that title to the subject property was fraudulently conveyed to A & R Equity in an attempt to avoid tax liens attaching to the property. Accordingly, the Court concludes that the transfer should be set aside and that the property is subject to the tax liens.[3]

## Sale of the Property

11.  When "there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof," the Government may bring an action in federal court to enforce the tax liens and a district court may decree a sale of the property and order a distribution of the proceeds. 26 U.S.C. § 7403(a), (c).

Having set aside the fraudulent conveyance of the property to A & R Equity, the property reverts back to being held by Mr. and Mrs. Tolbert as tenants by the entirety. Property held by spouses as tenants by the entirety may be sold to satisfy the delinquent

---

[3] Given the Court's conclusion in this regard, it is unnecessary for the Court to address the Government's alternative argument that the property is subject to the tax liens because A & R Equity holds the property as the nominee of the Tolberts.

taxes of one spouse.  See United States v. Craft, 535 U.S. 274, 283-88 (2002); United States v. Ryals, 480 F.3d 1101, 1109-1110 (11th Cir. 2007); Hatchett v. United States, 330 F.3d 875, 880-84 (6th Cir. 2003), cert. denied, 541 U.S. 1029 (2004).

As the Government recognizes, upon the sale of the property, Mrs. Tolbert would be entitled to one-half interest in the sale proceeds.  While Mrs. Tolbert contends, in her response to the summary judgment motion, that she has paid the majority of the mortgage payments on the property, her interest in the property – as a co-tenant by the entirety – is worth no more than half the value of the property.  Further, while in certain limited circumstances a court has equitable discretion to decline to order the sale of property subject to tax liens, such circumstances are not present here.  See United States v. Bierbrauer, 936 F.2d 373, 376 (8th Cir. 1991) (court's discretion in this regard is "'limited ... [and] should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes'") (quoting United States v. Rodgers, 461 U.S. 677, 711 (1983)).

## CONCLUSION

12. Based on the foregoing, the Courts finds that the Government's **Motion for Summary Judgment (Doc. 20)** should be and hereby is **GRANTED,** as the Government is entitled to a judgment on

the tax liens and an order of foreclosure and judicial sale of the subject property.

A separate judgment and order of sale will be entered accordingly.

**IT IS SO ORDERED.**

/s/ Jimm Larry Hendren
**JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE**